AF Approval _____          Chief Approval _____

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                    CASE NO. 6:22-cr-51-WBB-EJK

JAMES J. KING

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by Roger B. Handberg, United States Attorney for the Middle District of Florida, and the defendant, JAMES J. KING, and the attorneys for the defendant, Ashley D. Parker, Esquire, and Matthew P. Ferry, Esquire, mutually agree as follows:

### A.   Particularized Terms

#### 1.   Count Pleading To

The defendant shall enter a plea of guilty to Count Three of the Indictment.  Count Three charges the defendant with possession and transfer of a machinegun, in violation of 18 U.S.C. § 922(o).

#### 2.   Maximum Penalties

Count Three carries a maximum sentence of 10 years' imprisonment, a fine of not more than $250,000, a term of supervised release of not more than 3 years, and a special assessment of $100.  With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense, and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense, or to the community, as set forth below.

Defendant's Initials _____

3.   Elements of the Offense

The defendant acknowledges understanding the nature and elements of the offense with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count Three are:

First:    The defendant possessed a "machine gun"; and

Second:  The defendant knew it was a machine gun or was aware of the firearm's essential characteristics that made it a "machine gun" as defined.

4.   Counts Dismissed

At the time of sentencing, the remaining counts against the defendant, Counts One, Two, and Four, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5.   No Further Charges

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6.   Guidelines Sentence

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has

Defendant's Initials _GLh_                2

agreed to recommend in this plea agreement.  The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

7.    Acceptance of Responsibility - Three Levels

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will recommend to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a). The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this plea agreement, including, but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level.   The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and

Defendant's Initials _____          3

the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

8.    Cooperation - Substantial Assistance to be Considered

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require. If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both. If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim.

Defendant's Initials _G K_                    4

P. 35(b).  In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9.    Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

10.    Cooperation - Responsibilities of Parties

a.    The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime.  However, the defendant understands that the government can make no representation that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.    It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this

Defendant's Initials           5

agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)   The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)   The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which

Defendant's Initials _4ll_          6

may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

2.     <u>Forfeiture of Assets</u>

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture,

Defendant's Initials  _4 4_          7

pursuant to 18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's nominees.

      The defendant agrees and consents to the forfeiture of these assets pursuant to any federal criminal, civil judicial or administrative forfeiture action. The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

      If the United States seeks the forfeiture of specific assets pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered.  In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

      The defendant agrees to take all steps necessary to identify and locate all property subject to forfeiture and to transfer custody of such property to the United States before the defendant's sentencing.  To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other

Defendant's Initials _____                    8

parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant further agrees to be interviewed by the government, prior to and after sentencing, regarding such assets and their connection to criminal conduct. The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States. The defendant agrees that Fed. R. Crim. P. 11 and USSG §1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to the forfeitable assets before the defendant's sentencing. In addition to providing full and complete information about forfeitable assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the plea agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

Defendant's Initials _44 4p_                9

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement. The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed forfeiture amount, is collected in full.

**B.    Standard Terms and Conditions**

1.    Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, <u>shall</u> order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663A, for all offenses described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant to make restitution to any victim of the offense, pursuant to 18 U.S.C. § 3663, including restitution as to all counts charged, whether or not the defendant enters a plea of guilty to such counts, and whether or not such counts are dismissed pursuant to this agreement.   The defendant further understands that compliance with any restitution payment plan imposed by the Court in no way precludes the United States from simultaneously pursuing other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)), including, but not limited to, garnishment and execution, pursuant to the Mandatory Victims Restitution Act, in order to ensure that the defendant's restitution obligation is satisfied.

Defendant's Initials _____          10

On each count to which a plea of guilty is entered, the Court shall impose a special assessment pursuant to 18 U.S.C. § 3013. To ensure that this obligation is satisfied, the defendant agrees to deliver a cashier's check, certified check, or money order to the Clerk of the Court in the amount of $100, payable to "Clerk, U.S. District Court" within ten days of the change of plea hearing. The defendant understands that this agreement imposes no limitation as to fine.

2.    Supervised Release

The defendant understands that the offense to which the defendant is pleading provides for imposition of a term of supervised release upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    Immigration Consequences of Pleading Guilty

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    Sentencing Information

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count to which defendant pleads, to respond to comments made by

Defendant's Initials _____                11

the defendant or defendant's counsel, and to correct any misstatements or inaccuracies.    The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

     5.   Financial Disclosures

        Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P. 32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United States Attorney's Office within 30 days of execution of this agreement an affidavit reflecting the defendant's financial condition.    The defendant promises that his financial statement and disclosures will be complete, accurate and truthful and will include all assets in which he has any interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, dependent, nominee or other third party.  The defendant further agrees to execute any documents requested by the United States needed to obtain from any third parties any records of assets owned by the defendant, directly or through a nominee, and, by the execution of this plea agreement, consents to the release of the defendant's tax returns for the previous five years.  The defendant similarly agrees and authorizes the United States Attorney's Office to provide to, and obtain from, the United States Probation Office, the financial affidavit, any of the defendant's federal, state, and local tax returns, bank records and any other financial information concerning the defendant, for the purpose of making any recommendations to the Court and for collecting any assessments, fines,

Defendant's Initials  _9/4_         12

restitution, or forfeiture ordered by the Court. The defendant expressly authorizes the United States Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

      6.    <u>Sentencing Recommendations</u>

        It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

Defendant's Initials _____        13

7.   <u>Defendant's Waiver of Right to Appeal the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.   <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

Defendant's Initials _____        14

9.    <u>Filing of Agreement</u>

This agreement shall be presented to the Court, in open court or <u>in camera</u>, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.    <u>Voluntariness</u>

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant

Defendant's Initials _____    15

questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement.  The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty.  The defendant certifies that defendant does hereby admit that the facts set forth in the attached "Factual Basis," which is incorporated herein by reference, are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

12.    Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

Defendant's Initials _____      16

13.   Certification

The defendant and defendant's counsel certify that this plea agreement has been read in its entirety by (or has been read to) the defendant and that defendant fully understands its terms.

DATED this 10th day of June, 2022.

ROGER B. HANDBERG
United States Attorney

JAMES J. KING
Defendant

Ilianys Rivera Miranda
Assistant United States Attorney

Ashley D. Parker, Esquire
Attorney for Defendant

First Assistant United States Attorney

Matthew P. Ferry, Esquire
Attorney for Defendant

Defendant's Initials _____

17

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                          CASE NO. 6:22-cr-51-WBB-EJK

JAMES J. KING

## PERSONALIZATION OF ELEMENTS

First:     Did you possess a "machine gun"?

Second:    Did you know that it was a machine gun or were you aware of
           the firearm's essential characteristics that made it a "machine
           gun" as defined?

Defendant's Initials _____        18

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA

v.                                            CASE NO. 6:22-cr-51-WBB-EJK

JAMES J. KING

FACTUAL BASIS

During the month of July 2021, ATF began investigating James KING after he was identified as an individual suspected of selling 3D printed auto sears for AR type firearms during an investigation into AR and MH. Pursuant to 26 U.S.C. § 5845, auto sears constitute a machinegun because they are "part[s] designed and intended solely and exclusively ... for use in converting a weapon into a machinegun."

On or about January 13, 2021, an ATF CI[1] completed a purchase of four auto sears from AR. On or about January 15, 2021, ATF executed a federal search warrant at AR's residence in Orlando, Florida, to search for and seize evidence related to firearm violations. During a search of the residence, ATF SAs located three auto sears, similar to the four auto sears the CI previously purchased from AR. During an interview of AR, AR identified MH as his source for the auto sears.

---

[1] The CI is a paid informant who has previously provided reliable information concerning criminal activities that resulted in multiple convictions. The CI also provided information on criminal violations that were corroborated by an independent follow-up investigation.

Defendant's Initials _Jllc_                    19

On June 30, 2021, ATF SAs executed a federal search warrant of MH's residence in Haines City, Florida, and a 2013 silver Dodge van with a Florida license plate.  During a search of MH's residence, ATF agents located two auto sears similar to those recovered during the AR investigation.  The warrant included execution of a search warrant of MH's phone.   MH's phone contained text messages with phone number xxx-xxx-0385; this phone number was identified as belonging to James J. KING, the defendant.  The phone number was saved under contact name "Jim King Designs (Ar Fauto Clip)," indicating this was the source for a fully automatic clip, which is a common term used for the auto sears.  There were several messages between MH and KING indicating that MH was picking up a package from KING on several occasions between April and June 2021, to include the following messages: KING directed MH to pick up the "package" of 30 from KING's residence: "Ok my address is [xxxx] Melbourne fl 32904 , My sequoia is in drive way hes going to leave them for you in top drawer of a old night stand at left corner of my garage under flag were you going to cash app again ?."  KING also provided the following photograph which shows his residence and stated, "Right under flag on corner is the night stand:"

Defendant's Initials _J/MO_                     20



*Figure 1: Photograph provided by KING to MH indicating the location of the auto sears for pickup at the residence.*

ATF's Firearms and Ammunition Technology Division (FATD) forensically analyzed all seven auto sears purchased and recovered from AR and his residence and the two auto sears recovered from of MH's residence and found that they are 3D-printed auto sears, which are parts designed and intended solely and exclusively for use in converting a weapon into a machinegun. Thus, the auto sears are machineguns as defined in 26 U.S.C. § 5845(b).

On or about September 1, 2021, the same ATF CI previously used in this investigation purchased one auto sear for a semi-automatic AR type firearm directly from KING at his residence, which was located in the Middle District of Florida. *See* Count One of the Indictment. The CI initially met with ATF agents at a predetermined location, who searched the CI's person and vehicle before and

Defendant's Initials _____

after the controlled purchase with negative results. The CI was equipped with ES equipment and provided official government funds (OGF) for the transaction.

While at KING's residence under the ruse to get the CI's vehicle detailed by KING, the ATF CI and KING began discussing firearms and various parts and accessories. The CI asked KING if he knew how to make silencers. KING said, "no, I'm not doing 10 years in a federal penitentiary." KING then went on to describe how to make one from an oil filter, showing the CI which filter to purchase online. While talking about silencers, KING switched the subject and began describing a 3-D printed auto sear, what they look like and how to install one. KING said, "you drop it in and close the gun and when you do, its full auto" and "they are just 3D printed, but what it does is its so f*ing illegal takes a regular AR and makes it full auto." KING further explained to the CI how to locate and download a file online, which has the software for creating a 3-D printed auto sear. KING told the CI that ATF is regulating the files and taking them down, however, he knows someone who downloaded the file before it was removed. KING said this person lives in Alabama and still makes the auto sears. KING was referring to Ivan Hollingsworth, who was indicted separately for selling auto sears to an ATF undercover agent. Ivan Hollingsworth appeared to be KING's supplier, based on KING's statements and evidence obtained in the case. The CI asked to see an auto sear and told KING he brought cash with him. KING went inside his residence, retrieved a 3-D printed auto sear, and then sold it to the CI for $20. The

Defendant's Initials _____          22

FATD forensically analyzed the auto sear and found it to be a machinegun as defined in 26 U.S.C. § 5845(b).

On or about October 5, 2021, the CI purchased five additional auto sears and a Springfield Hellcat pistol from KING at his residence. *See* Counts Two and Three of the Indictment.[2]  Prior to the purchase, the CI was in contact with KING via phone and set up the purchase of both the firearm and auto sears.  The CI initially met with ATF agents at a predetermined location who searched the CIs person and vehicle before and after the controlled purchase with negative results. The CI was equipped with ES and provided OGF for the transaction.  While KING and the CI were looking at the firearm that was eventually purchased, the ATF CI asked for "hangers," a common term used to describe 3-D printed auto sears and said, "let me get 5 of them."  KING went into his residence to get the 3-D printed auto sears,  When he returned KING talked about needing to get more from his source, later identified as Ivan Hollingsworth. KING said, "he's laying low too, me and him have to talk in code on the phone when I call him in Alabama, I'm like 'hey, you know those green apples that I got from you', he's goes yeah the s**, I want you to send me those from your grandmothers tree." The ATF CI, who is an actual convicted felon, stated "I'm a convicted felon man" and KING replied with, "I know, I know this. I didn't hear that."  KING then told the CI that he should keep the firearm box in case he decides to sell the firearm in the future.  The CI was

---

2 Count Three only includes one auto sear, but KING in fact sold the CI five auto sears.

Defendant's Initials           23

concerned about keeping a firearm box because he was not supposed to have a firearm. KING explained that the item was just a box, which he is allowed to have. Thereafter, the CI provided KING $800 in OGF for the firearm and auto sears. ATF's FATD forensically analyzed the five auto sears and found them to be machineguns as defined in 26 U.S.C. § 5845(b).

On March 15, 2022, the CI purchased a Ruger 9 mm pistol and one auto sear from KING at his residence. *See* Count Four of the Indictment. Prior to the purchase, the ATF CI was in contact with KING via phone and set up the purchase of the firearm. The CI initially met with ATF agents at a predetermined location who searched the CI's person and vehicle before and after the controlled purchase with negative results. The CI was equipped with ES equipment and provided OGF for the transaction. KING was inside the garage of his residence when the CI made contact. KING showed the CI several features of the firearm and told the CI that the gun has never been fired before and that it is "brand new." The CI then asked KING if he had any "door hangers," a term KING and the CI had previously used to refer to 3-D printed auto sears, and KING replied "yeah, one." KING briefly entered the residence, returned with the drop in auto sear, and confirmed he was selling it for $20. The CI paid KING a total of $720 for both the Ruger pistol and the auto sear. The CI then walked back to his vehicle and placed the firearm and auto sear in his vehicle. The CI returned to talk with KING and told him that there were a couple places the CI wanted to visit to get firearms but that he could not go because he was a "felon." The CI asked KING if he would purchase firearms for

Defendant's Initials _____      24

the CI and said he would pay KING in cash. KING agreed and told the CI "like I said, if you ever get pinched, and they ask where that gun came from [say], I got it off a guy." Further, KING told the CI to tell the police he sold the firearm to "a guy" at a gun show and got one in return.  KING talked about knowing someone who was stopped by law enforcement who said he got the gun from "a guy" and this person "walked."  KING described how this person was a felon and needed the firearm for protection and "got lucky" the police were willing to let him go.

Agent Simmons field tested the auto sear and found that it functioned as a machinegun. FATD's forensic analysis is pending.

On October 12, 2021, a query was conducted of the ATF Federal Licensing System (FLS) to determine if KING possessed Federal Firearm Licenses (FFL) with negative results, indicating that KING has not been issued such license nor is he listed on any other person or corporation's license.

Defendant's Initials _____     25