UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                               CASE NO. 6:22-cr-51-WWB-EJK

JAMES J. KING,

    Defendant.

_____/

## **DEFENDANT'S AMENDED SENTENCING MEMORANDUM AND REQUEST FOR A DOWNWARD VARIANCE SENTENCE**

The Defendant, JAMES J. KING, by and through his undersigned counsel, files this, his Sentencing Memorandum.

Mr. King acknowledges the serious nature of the crime to which he plead guilty, and submits that a period of probation is an appropriate sentence given the facts of his case and the acknowledged substantial, timely and truthful assistance he has provided to the United States. This sentence reflects the nature and circumstances of Mr. King's offense, his lack of prior criminal history, his personal characteristics, his substantial cooperation and his extreme remorse and is "sufficient, but not greater than necessary" to serve the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2).

## **I.  INTRODUCTION**

On June 14, 2022, Mr. King entered a guilty plea to Count Three of the Indictment. Count Three of the Indictment charged that on or about October 5, 2021, Mr. King did knowingly possess and transfer one machine gun, that is, one auto sear device, which is a part designed and intended for use in converting a weapon into a machine gun in violation of 18 U.S.C. §§ 922(o) and 924(a)(2). A conviction under 18 U.S.C. § 924(a)(2)

carries a maximum sentence of ten (10) years imprisonment, a fine of not more than $250,000.00, a term of supervised release of up to three (3) years, and a special assessment of $100.00.

Mr. King respects the legal process and knows he must now face sentencing before this Court. This Memorandum is submitted in an effort to assist the Court to impose a just and fair sentence in this case.

## II. SENTENCING AFTER THE UNITED STATES SUPREME COURT'S DECISION IN *BOOKER*

In *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed. 2d 621 (2005), the United States Supreme Court declared unconstitutional the portion of the Sentencing Reform Act, 18 U.S.C. § 3553(b)(1), which made the Federal Sentencing Guidelines mandatory. As a result, the Supreme Court's decision rendered the Sentencing Guidelines advisory in nature. The *Booker* Court's holding "requires a sentencing court to consider Guidelines ranges, but permits the court to tailor the sentence in light of other statutory concerns as well," such as the individual characteristics of the defendant or the circumstances of the offense. *Id*. Post-*Booker*, the Supreme Court repeatedly emphasized the importance of the Sentencing Commission in formulating the sentencing guidelines in light of its institutional expertise and its focus on empirical analysis:

> While rendering the Sentencing Guidelines advisory . . . we have nevertheless preserved a key role for the Sentencing Commission . . . . Congress established the Commission to formulate and constantly refine national sentencing standards . . . . Carrying out its charge, the Commission fills an important institutional role: It has the capacity courts lack to "base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise."

*Kimbrough v. United States*, 552 U.S. 85, 108-09, 128 S.Ct. 558 (2007).

2

In light of the Supreme Court's decision in *Booker*, district courts are now required to consider both the sentencing goals in 18 U.S.C. § 3553(a) and the Sentencing Guidelines when imposing a sentence. *See, United States v. Hunt*, 459 F.3d 1180 (11th Cir. 2006*); United States v. Williams*, 435 F.2d 1350 (11th Cir. 2006).

Pursuant to 18 U.S.C. § 3553(a), "[t]he court shall impose a sentence sufficient, **but not greater than necessary**, to comply with the purposes set forth in paragraph (2) of this subsection." (Emphasis added.) This provision is the overarching command of the statute. *United States v. Riley*, 655 F.Supp. 2d 1298 (S.D. Fla. Sept. 5, 2009).

Thus, in imposing a sentence, a district court must consider the following factors in 18 U.S.C. § 3553(a):

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(3) the need for adequate deterrence;

(4) the need to protect the public;

(5) the need to provide the defendant with needed educational or vocational training, or medical care;

(6) the kinds of sentences available;

(7) the Sentencing Guidelines range;

(8) pertinent policy statements of the Sentencing Commission;

(9) the need to avoid unwarranted sentence disparities; and

> (10) the need to provide restitution to any victims of the offense.

Although a district court is no longer bound to apply the guidelines, it must consult and take them into account. In order to properly consult the guidelines, a district court must accurately calculate an advisory guideline range. *Williams,* 435 F.3d at 1353; *United States v. Crawford*, 407 F.3d 1174, 1178-79 (11th Cir. 2005). After it has made this calculation, however, the district court may impose a more lenient sentence as long as the sentence is reasonable.

Although a district court is required to calculate the applicable sentencing guidelines range, the sentencing guidelines are not presumptively reasonable or unreasonable. *Gall v. United States*, 128 S.Ct. 586, 595 (U.S. 2007). In imposing sentence, a district court may, on a case-by-case basis, determine the appropriate weight to be given to the guidelines and the various § 3553(a) factors. *United States v. Lamonda*, 2008 WL 68744 (M.D. Fla. Jan. 2, 2008).

The Final Presentence Investigation Report (PSR) was completed by the United States Probation Office on September 12, 2022. The Final PSR calculates Mr. King's total offense level as a Level 19 with a criminal history category of 1. Thus, the Final PSR provides for an advisory guideline imprisonment range of 30 - 37 months.

### III. MOTION BY UNITED STATES FOR DOWNWARD DEPARTURE OF DEFENDANT'S SENTENCE BASED UPON SUBSTANTIAL ASSISTANCE

The Government has filed a Motion for Downward Departure of Mr. King's sentence based upon his substantial, timely and truthful assistance to the Untied States. Upon being arrested, Mr. King immediately accepted responsibility and cooperated fully and truthfully

with law enforcement and the government. Through his cooperation he came to realize the danger of possession and/or selling these devices and them ending up in the wrong persons' possession. Mr. King has provided truthful answers to every question law enforcement and the Government have had.

The Court, on motion of the government, may reduce a defendant's sentence to reflect a defendant's substantial assistance. USSG §5K1.1. Here, Mr. King provided truthful and timely information to the United States which resulted in the successful prosecution of Ivan C. Hollingsworth, Case No. 6:22-cr-52WWB-LHLP. The information provided by Mr. King helped the government identify numerous other charges against Hollingsworth. Eventually, Hollingsworth pled guilty a week prior to trial. Mr. King met with the government attorney and federal agents on several occasions, even on short notice. Through his efforts, the government was able to identify two additional suspects involved in the commission of federal firearm violations. Mr. King's timely and diligent assistance led the government to develop robust evidence in this case and against the two additional targets.

The government in it's Motion for Downward Departure agrees and asks the Court that because of Mr. King's efforts on behalf of the United States, he should receive an 8 level reduction in his offense level for his assistance, for a total offense level of 11 (Zone B). This carries a guideline imprisonment range of 8-14 months. However, the government is recommending a sentence of three years probation and 50 hours of community service through a non-profit organization, because it believes the sanction is sufficient but not greater than necessary to 18 U.S.C § 3553(a). Mr. King joins in the recommended sentence of the United States.

## IV.  REASONABLE SENTENCE

Mr. King understands that it has been determined that he broke the law and that he must be punished for his crime. However, in fashioning a reasonable sentence, this Court must consider all the factors set forth in 18 U.S.C. § 3553(a).

### A. Nature and Circumstances of the Offense

The facts of this case are uncontested. Mr. King knowingly sold a device that converts an otherwise legal firearm, into a machine gun. However, Mr. King's acceptance of responsibility, remorse, cooperation, and other factors set forth below weigh in favor of a sentence below of the guidelines.

### B. History and Characteristics of James J. King

Mr. King was born in Fairfax, Virginia, on January 24, 1969 to James King and Carol Workman (Weisenfluh). After birth, Mr. King had no contact with biological father until he was in his late thirties when he was eventually able to locate him after years of searching. At a young age, Mr. King's mother married Dwight Dovel, who adopted Mr. King and changed his name to James Edward Dovel II. Ms. Workman and Mr. Dovel later divorced when Mr. King was around 12 years old.

Growing up, Mr. Dovel was Mr. King's main father figure. After the divorce, Mr. King would share time between his mother's residence and Mr. Dovel's. Mr. King has two half-siblings, Stacy Strohl and Michael Dovel, with whom Mr. King is in regular contact. Stacy works as an Operations Manager for a law firm in Pensacola, Florida, and Mike works as a kidney dialysis technician in Palm Bay, Florida.

Growing up, Mr. King enjoyed learning about guns. He would attend gun shows with Mr. Dovel, who was civil war historian, looking for unique items for his collection. Additionally, on camping trips Mr. Dovel would teach Mr. King about guns, how to shoot

them and proper gun safety. Mr. King never saw them as weapons used to hurt people, but instead to be collected or used recreationally via hunting or at a shooting range.

Mr. King graduated from Lake Weir High School in Ocala, Florida, and studied a few courses at Brevard Community College before having to withdraw to join the workforce.

Mr. King was married for 10 years to Kimberly King. Together they had two children (twins, a boy and a girl). That marriage ended in divorce in 2007 when Mr. King found out Ms. King had been unfaithful to him. Mr. King always supported his children emotionally and financially, and following the divorce he shared custody of the children with Ms. King until they turned 18. Both of Mr. King's children are successful and live productive lives. His son, Brendin, is a high structure welder and his daughter, Breann, is a manager of a Domino's pizza.

Since 2012, Mr. King has been in a relationship with his now fiancé Christina Cole. They reside together in a rental home in Melbourne, Florida. Ms. Cole has four children from a prior relationship, two of whom live in the home with her and Mr. King, Christian Cole (age 21) and Rylan Cole (age 14). Mr. King describes their relationship as excellent. Mr. King helps to financially support Ms. Cole, her children and her grandchildren. Mr. King is dedicated to his family.

Mr. King is described by those close to him as reliable, honest, social, and hard-working. This is demonstrated by Mr. King working two jobs to provide for him and Ms. Cole's family. Since 2000, he has owned his own business, Jim King Detailing, where he details cars. Additionally, since 2014 he has worked at Sophisticated Gents Entertainment and Design where he works as a DJ and does manual labor helping to set up for various events.

There is strong support for Mr. King from those who know him and have known him for many years, as evidenced by the attached letters received by undersigned counsel from the following individuals (composite Exhibit A):

a. Mr. King's fiancé, Christina Cole;

b. Mr. King's sister, Stacy Strohl;

c. Mr. King's brother-in-law, Jonathan Strohl;

d. Mr King's brother, Michael Dovel;

e. Mr. King's mother, Carol Workman;

f. Mr. King's step-father, Edward Workman;

g. Mr. King's employer and friend, Frederick Smith; and

h. Mr. King's customer and friend, Thomas Switzler.

A reading of these letters spotlight Mr. King's caring and giving nature. For example, he works two jobs to help support his fiancé and her children. Additionally, when Mr. King became concerned about his brother's drinking, he helped him overcome his addiction to alcohol. Because of Mr. King's concern and help, his brother was five years sober on September 29, 2022.

While appearing to be healthy, Mr. King suffers from chronic neck and back pain. He was born with scoliosis in his back, which was severely aggravated by a car accident in 1992 and a motorcycle accident around 2007. He also has herniated discs in his neck, which in combination with other conditions, causes constant neck pain and migranes.

When considering the totality of the man who is James King, it is clear he is a man who made a terrible mistake, did not recognize the gravity of his conduct at the time, and is extremely and sincerely remorseful for his actions. Mr. King grew up going to gun shows and saw owning and possessing firearms as a hobby. He enjoyed learning about them but never saw them as dangerous weapons used to harm people. Despite possessing auto

sears and understanding how they operate, Mr. King has never fired a weapon using one. An auto sear was simply a unique item to have.

### C. Need for Just Punishment in Light of the Seriousness of the Offense

In fashioning an appropriate sentence, the Court must consider the need for the sentenced imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence to criminal conduct, and to protect the public from further crimes of Mr. King. 18 U.S.C § 3553(a)(2).

In Mr. King's case, all these purposes may be properly served with a probationary sentence as also recommended by the United States. The charge for which Mr. King has pled, is for possessing and transferring a machine gun (auto sear). This is a device that converts a semi-automatic rifle into an automatic one. Again, for Mr. King auto sears were unique items to own.

Prison will not do anything to better Mr. King. He is not a drug user. He is not in need of education or learning a trade and prison will not serve as a deterrence for Mr. King. For Mr. King, hurting his family was the most devastating punishment and deterrence. Mr. King desires to be able to continue to financially and otherwise provided support and assistance to his family. Additionally, as previously mentioned, Mr. King suffers from chronic neck and back pain, which will significantly increase if given a prison sentence.

Since his arrest, Mr. King's actions show acceptance of responsibility and extreme remorse. He is devastated how this has impacted his life and his family. For the remainder of his life, Mr. King will be a convicted felon. The Court need not impose a prison sentence to convince Mr. King to not do this again. The Court need not impose a prison sentence to protect the public from Mr. King.

### D. Sentencing Guidelines and Policy Statements

While the Court must consider the applicable guideline range and Sentencing Commission policy statements pursuant to 18 U.S.C. § 3553(a)(4) and (5), any sentence within this range would be "greater than necessary" to serve the purposes of sentencing in Mr. King case.

### E. Need to Avoid Unwarranted Sentencing Disparities

Also included among the § 3553(a) factors to be considered by the Court at sentencing is the need to avoid unwarranted sentencing disparities among defendants who have been found guilty of similar conduct. 18 U.S.C. § 3553(a)(6). Whether any difference among sentences is warranted or unwarranted depends on the individual circumstances of each case and their relationship to the purposes of sentencing. "Unwarranted disparity is defined as different treatment of *individual* offenders who are similar in relevant ways, or similar treatment of *individual* offenders who differ in characteristics that are relevant to the purposes of sentencing." U.S. Sent'g Comm'n, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform* 113 (2004).

The Court is respectfully requested to take note of *United States v. Max Bennett Chambers*, Case No. 6:20-cr-78-Orl-40DC1, in the Middle District of Florida, Orlando Division. Pursuant to a plea agreement, Mr. Chambers entered a plea to the same offense as Mr. King - one count of Possession and Transfer of a Machinegun, in violation of 18 U.S.C. § 922(o). His Pre-Sentence Report set forth a Total Offense Level of 17 and he had a Criminal History Score of I., which put his guideline range at 24-30 months. As part of the plea, the Government recommended the Court vary downward two levels under the guidelines, which put Mr. Chamber's guideline range at 18-24 months. Mr. Chambers, who

was a student at the University of Central Florida, possessed an AR-15 that he had modified to make it fire automatically using an auto sear. Additionally, Mr. Chambers was manufacturing other auto sears, storing them on campus where firearms are prohibited, and had been in discussions to possibly sell them with a friend. Mr. Chambers was ultimately sentenced to 1 year of probation.

The Court is respectfully requested to take note of *United States v. Adam Lee Rosemayer*, Case No. 6:21-cr-25-RBD-EJK, in the Middle District of Florida, Orlando Division. Mr. Rosemayer entered a plea to the same offense as Mr. King - one count of Possession and Transfer of a Machinegun, in violation of 18 U.S.C. § 922(o). Mr. Rosemayer sold 5 firearms to a CI whom he knew had been convicted of a crime punishable by imprisonment for a term exceeding one year. Additionally, he sold the CI 4 auto sears. In the course of negotiations with the CI, Mr. Rosemayer stated he would sell to "anyone." Later, upon searching Mr. Rosemayer's residence, ATF agents located an additional three auto sears along with other firearms and firearm parts. In the criminal complaint, it stated that between October 21, 2019 and January 14, 2021, that Mr. Rosemayer had purchased 51 firearms and that there were approximately 15 firearm Trace Summary Reports indicating recovered firearms from various crime scenes, all listing Mr. Rosemayer as the original purchaser. At the time of sentencing, the Government requested a 4-level reduction. On August 9, 2021, Mr. Rosemayer was sentenced to 30 months incarceration followed by 1 year of supervised release.

The Court is respectfully requested to take note of *United States v. Marc A. Hayes,* Case No. 6:21-cr-105-ACC-DC1, in the Middle District of Florida, Orlando Division. Mr. Hayes, entered a plea to one count of Possession and Transfer of a Machinegun, in

11

violation of 18 U.S.C. § 922(o) and one count of Possession of Machineguns Not Registered in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. § 5841. His guidelines range was 57-71 months. At the time of sentencing, the Government requested a 2-level downward variance, which placed his guideline range at 46-57 months. On February 14, 2022, Mr. Hayes was sentenced to 36 months followed by 2 years of supervised release.

This Court should take into account Mr. King's individual circumstances; including, his lack of criminal history, age, medical condition, acceptance of responsibility, substantial cooperation and extreme remorse in fashioning its sentence.

## V.  CONCLUSION

Mr. King is fully aware that his conduct was inappropriate and illegal.  He understood this immediately and was thus very willing to cooperate completely with law enforcement. He has expressed extreme remorse for his actions and has done everything he could since his arrest to try and remedy his actions.

Mr. King is 54 years old.  The letters of support provided to the Court (attached hereto as composite Exhibit A) are compelling and demonstrate that Mr. King continues to receive the support of his family and friends.

There is no doubt that Mr. King must be punished for this offense, but he submits that a period of probation is an appropriate sentence given his lack of prior criminal history, his personal characteristics, substantial cooperation and his extreme remorse. Mr. King is grateful that the government in it's Motion for Downward Departure also agrees that the imposition of such a sentence would be sufficient but not greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553(a).

Respectfully submitted this 10th day of April, 2023.

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 10, 2023, I have electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Ilianys Rivera Miranda, Assistant United States Attorney, United States Attorney's Office, Suite 3100, 400 W. Washington Street, Orlando, FL 32801, at ilianys.rivera@usdoj.gov, and United States Probation Officer Jennifer Trittipo, jennifer_trittipo@flmp.uscourts.gov

| s/ Ashley D. Parker | s/ Warren W. Lindsey |
|---|---|
| ASHLEY D. PARKER, of | WARREN W. LINDSEY, of |
| Lindsey, Ferry & Parker, P.A. | Lindsey, Ferry & Parker, P.A. |
| 341 N. Maitland Avenue, Suite 130 | 341 N. Maitland Avenue, Suite 130 |
| Maitland, FL 32751 | Maitland, FL 32751 |
| *Mail*:  P.O. Box 505 | *Mail*:  P.O. Box 505 |
| Winter Park, FL 32790-0505 | Winter Park, FL 32790-0505 |
| Telephone: (407) 644-4044 | Telephone: (407) 644-4044 |
| Fax: (407) 599-2207 | Fax: (407) 599-2207 |
| Ashley@lindseyferryparker.com | warren@warrenlindseylaw.com |
| Florida Bar No. 112680 | Florida Bar No. 299111 |